UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY KING and LOURDES GLEN, | § | |
| Plaintiffs, | § | |
| v. | § | Cause No. 1:16-cv-131 |
| | § | |
| RICHARD MUNOZ #3029, BRIAN HUCKABY #5159, GUSTAVE GALLENKAMP #7077, VANESSA JIMENEZ #7611 and UNKNOWN OFFICERS. | § § § § § § | |
| Defendants. | § | |

## COMPLAINT

In the early morning of November 6, 2015, a group of young people were leaving downtown Austin after a fun evening. After crossing the street, police officers suddenly charged from behind and leapt on two African American men in their party, including Jeremy King, roughly arresting them, but ignoring similarly-situated Anglo pedestrians in the group. Officers then arrested one of their friends, Lourdes Glen, for criticizing the officers' rough treatment of the men.

The Plaintiffs are suing the police officers for excessive force, violating the Equal Protection Clause, and for retaliating against them for protected free speech.

## STATEMENT OF THE CASE

1. Police officers arrested Mr. King because he is black, ignoring similarly-situated Anglo men and women who were in his group who allegedly jaywalking at the same time he allegedly jaywalked. This race-based enforcement of the law violates the Equal Protection Clause.

2. Officers used excessive force on Mr. King and Ms. Glen. Their use of force was not authorized by Texas law, and it was unreasonable under the circumstances – they were accused for the lowest of misdemeanors, and their actions offered no hint of a threat or intent to escape. Therefore, the force was excessive.

3. Finally, officers arrested Ms. Glen because she was criticizing their treatment of Mr. King and the other African American man they were arresting. She was similarly situated to other alleged jaywalkers, who were also standing nearby but were not arrested. Officers chose to arrest her because they didn't like what she was saying, violating her right to free speech.

## JURISDICTION AND VENUE

4. The Court has jurisdiction of federal civil rights claims under 28 U.S.C. § 1331.

5. The Court has supplemental jurisdiction over the state law claims in this suit pursuant to 28 U.S.C. § 1367.

6. Defendants' actions, and the events giving rise to the claims, occurred in Travis County, Texas. Accordingly, this Court is the proper venue pursuant to 28 U.S.C. § 1391.

## PARTIES

7. Jeremy King and Lourdes Glen are residents of Bexar County.

8. Defendants are Austin Police Department officers Richard Munoz, Brian Huckaby, Gustave Gallenkamp, Vanessa Jimenez, and other officers on the scene whose names are unknown at this time.

## STATEMENT OF FACTS

9. In the early morning of November 6, 2015, Mr. King and Ms. Glen were with a group of friends who were visiting "Sixth Street" in Austin, a common gathering place for residents and tourists.

10. At 2:40 am, the group was ending it evening, walking east along Sixth Street to get to a spot where they could call an Uber driver to take them home.

11. Their peaceful evening was abruptly interrupted after crossing Red River Street, when a group of police officers unexpectedly charged from behind and leapt on two members of their

party.

12. A cadre of officers later claimed the group had jaywalked across Red River Street – which, if true, would be a class C misdemeanor, punishable by a fine of up to $200. Tex. Trans. Code 552.001 (defining the infraction); 542.401 (defining the penalty).

13. The young people composing the group were no different than any of the other people around Sixth Street at the time, aside from having allegedly jaywalked. They did not pose a danger the officers, the public, or themselves. They did not present any outward threats of danger, such as acting with hostility. They were making no sign of trying to escape the officers, such as increasing their speed or moving evasively – nor could they have, since they were not aware the police were about to descend on them. They were merely friends making their way home from Sixth Street.

14. The police officers did not approach the alleged jaywalkers and ask them to stop. They did not ask for identification, nor did they tell them they were under arrest. Instead, two small clusters of officers charged toward two African American men in the group, approaching from behind, shoved them into a building, and immediately began contorting their arms to put them in handcuffs.

15. Mr. King was one of those African American men. Police, including Officers Huckaby and Munoz, grabbed and pushed him into a wall, twisted his harms back into handcuffs, and shortly thereafter, slammed him to the ground. Officers swarmed on top of him, including Officer Gallenkamp, who put his knee on the back of Mr. King's neck and rested the full weight of his body on it. A doctor later diagnosed Mr. King with acute cervical strain, acute wrist sprain, multiple acute contusions, and multiple acute abrasions from the incident.

16. Nearby, other officers were striking the second African American man with knees and fists, though he made no effort to resist them.

17.  While the police abused the two men, their friends remained nearby – including Lourdes Glen. She didn't make any hostile movements to suggest she was a threat to the officers; nor did she get close enough to interfere with the police officers arresting the two men. She did, however, express her opinion that the arrest was unreasonable, saying:

*What the hell? Stop!*

*Record it, Rolando!*

*He's hurting him!*

*They're hurting them for no reason!*

*What are you doing this for?*

18.  Soon Officer Jimenez roughly grabbed her, and without telling her she was under arrested, forcibly yanked her arms behind her back to handcuff her, while another officer roughly shoved her head forward and down so that she was bent at a 90 degree angle while being handcuffed. They charged Ms. Glen was jaywalking, but they didn't bother to arrest the other alleged jaywalkers who were still present at the scene.

19.  The officers chose to arrest Ms. Glen because they didn't like what she was saying about their arrest of her two friends.

## CAUSES OF ACTION

A.  <u>Equal Protection: Selective Enforcement</u>

20.  Even when a police officer has probable cause to arrest a person, they cannot exercise the power to arrest differently for similarly situated people because of those people's race, ethnicity, or other protected status.  Selectively enforcing the law is a violation of the Equal Protection Clause of the Fourteenth Amendment.

21.  Mr. King and Ms. Glen walked through the intersection with a group of people – some

4

friends, some strangers. The group included Anglo, Latino and African American pedestrians.

22. The police charged at the two African American men in the group and arrested them, while other alleged jaywalkers either stood by or walked away. The only other person the police ultimately arrested was Ms. Glen – a Latino woman. They entirely ignored the Anglos in the group that had allegedly jaywalked.

23. Further, a video camera across the street captured footage of the intersection shortly after the altercation – after the arrest, but before the police cars left. The footage clearly shows two men, apparently Anglo, walking through the intersection 10 to 15 seconds apart from each other while the pedestrian signal displayed a bold, red hand. The officers nearby ignored their jaywalking.

24. Statistics also support the inference that APD chooses to arrest African American pedestrians more often than Anglos with whom they are similarly situated. In 2015, APD officers arrested 62 African American pedestrians and 62 Anglo pedestrians for jaywalking – an equal number – even though the population of Austin is only 7% African American and 47% Anglo.

25. The circumstances of the arrest show the officers arrested Mr. King and the other man because they were black.

B. Excessive force

26. The officers used an unreasonable level of force when arresting Mr. King and Ms. Glen. The officers caused them injury, which resulted from force which was excessive under the circumstances, and objectively unreasonable.

27. First, the officers' exercise of force was not authorized by Texas law, making it per se unreasonable. Texas Penal Code 9.051(a) authorizes a peace officer to use force against a person "to the degree the [officer] reasonably believes the force is immediately necessary to make or assist

in making an arrest" but only if "before using force, the [officer] manifests his purpose to arrest."

28. The officers arresting Mr. King did not "manifest their purpose to arrest" him before they began using force on him, e.g. by telling him he was under arrest. Instead, they launched directly into using force. Therefore, their use of force was not authorized by Texas Penal Code 9.051(a), making it unreasonable per se.

29. Nor could they have reasonably believed forced was "immediately necessary" to make the arrest – he was a young person who had allegedly jaywalked, who displayed no signs of danger, hostility, or intent to escape. No reasonable officer would have believed it was necessary to use force based on what they saw. Therefore, their use of force was not authorized by Texas Penal Code 9.051(a), making it unreasonable per se.

30. Further, the officers' application of force on Mr. King was unreasonable in light of Fourth Amendment standards. The facts make it clear that applying force was objectively unreasonable.

31. The crime Mr. King allegedly committed (jaywalking) is perhaps the least-severe criminal charge in Texas law. It gives rise to a mere fine of $1 to $200. Tex. Trans. Code 552.001 (defining the infraction); 542.401 (defining the penalty).

32. APD's Policy Manual instructs officers that "Class C misdemeanors should generally be enforced by a field release citation," unless a citation will not "stop existing criminal conduct," "remove the imminent threat of violence or criminal conduct" or "prevent persons from endangering themselves or others." Under the circumstances, the officers had no reason to believe an arrest was necessary under the criteria in their own policy manual.

33. Mr. King displayed no indication of posing an immediate threat to anyone's safety, nor was he actively resisting or attempting to evade arrest when the officers suddenly leap on him.

34. Similarly, the officers arresting Ms. Glen did not first "manifest their purpose to arrest" her and give her the opportunity to simply present her writs to be handcuffed, in violation of Texas Penal Code 9.051(a). Instead, they silently grabbed her, twisted her arms behind her, and shoved her head forward so her body was contorted into a 90 degree angle while they closed the handcuffs around her wrists. They exposed her to this gross public indignity for the charge of jaywalking.

35. Nor could officers have believed that roughing her up on the corner of Sixth Street was "immediately necessary to make the arrest." She was a young person who had allegedly jaywalked, who displayed no signs of hostility or intent to escape. No reasonable officer would have believed it was necessary to use force based on what they saw. Therefore, their use of force was not authorized by Texas Penal Code 9.051(a), making it unreasonable per se.

C. <u>Common law assault</u>

36. The officers' use of force on Mr. King and Ms. Glen was not authorized by Texas Penal Code 9.051(a).

37. The officers intentionally engaged in physical contact with them, knowing they would regard the contact as offensive. The officers are therefore liable for common law assault under state law.

D. <u>First Amendment retaliation</u>

38. Put simply, the officers chose to arrest Ms. Glen for jaywalking because they were upset by her criticism of their use of force on her friends.

39. When they arrested her, she was standing nearby, similarly situated to other people who had allegedly jaywalked. Yet the officers only arrested Ms. Glen.

40. Ms. Glen was not physically interfering with the officers' arrest of Mr. King and his companion, nor did it appear she was about to interfere. She was not threatening the officers or

giving any sign of attempting to evade arrest. According to APD's own policy manual, the officers should have simply given her a citation; however, they chose to arrest her because they were angry about her criticism. In doing so, they violated her First Amendment right to free speech.

## DAMAGES

41. Plaintiffs seek compensatory and punitive damages.

## JURY DEMAND

42. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs request a jury for all issues triable to a jury

## ATTORNEY'S FEES

43. Plaintiffs are entitled to reasonable attorney's fees, costs, and litigation expenses.

## CONCLUSION

THEREFORE, Plaintiffs respectfully pray this Court grant the following relief:

A. Award compensatory and punitive damages;

C. Award reasonable attorneys' fees, litigation expenses, and court costs; and

D. Grant all other and additional relief to which Plaintiffs are entitled, at law or in equity.

DATED: February 15, 2016.

Respectfully submitted,

/s/ Brian McGiverin
Brian McGiverin
Texas Bar No. 24067760
brian@lawcenterofaustin.com

DIETZ, LAWRENCE & MCGIVERIN
2221 Hancock Drive
Austin, TX 78756
Telephone: (512) 366-2114
Fax: (512) 597-0805

ATTORNEY FOR PLAINTIFFS