UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY KING and LOURDES GLEN, | § | |
| Plaintiffs, | § | |
| v. | § | Cause No. 1:16-cv-00131-SS |
| | § | |
| RICHARD MUNOZ #3029, BRIAN HUCKABY #5159, GUSTAVE GALLENKAMP #7077, VANESSA JIMENEZ #7611 and UNKNOWN OFFICERS. | § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE SAM SPARKS:

Jeremy King and Lourdes Glen brought civil rights claims against Defendants under 42 U.S.C. § 1983. Defendants submitted a motion for summary judgment, but it has a fatal flaw – it relies almost exclusively on disputed material facts.[1] Pull that thread and it falls to pieces. Therefore, Defendants' motion should be denied.

DISPUTED FACTS[2]

On Thursday, November 5, 2015, Jeremy King and Lourdes Glen, young adults who have been friends since high school, drove from San Antonio to Austin to spend the weekend at the "Fun Fun Fun Fest" music festival.[3] That evening, they went out with a group of friends, composed of themselves and three other people, to Austin's 6th Street entertainment district. It was a quiet, pleasant evening, similar to the kind of evening that thousands of people have had on 6th Street, until the group's encounter with the Defendants.

---

[1] Most of the disputed facts can be found in Mr. King and Ms. Glen's deposition transcripts, which Defendants attached as exhibits to their motion but scarcely cited, instead relying on their own version of the facts.

[2] Plaintiffs' declarations authenticate the following video of the incident: https://youtu.be/N340_o0mzfI

[3] Exhibit 1 (King) para. 1.

Defendants' motion, when referring to the point in the evening when Jeremy and Lourdes initially encountered the Defendants, says "[Jeremy and Lourdes] deny they were intoxicated" – though the statement appears calculated to insinuate the opposite. In contrast, the motion omits facts showing Jeremy and Lourdes are real people. Lourdes graduated from high school in San Antonio, completed some college, and at the time of these events had spent three years working for Nationwide Insurance as a sales agent. At this moment she is completing a five-year business degree at Universidad del Norte in Columbia. Jeremy also graduated high school in San Antonio, completed some college, and is employed at the Xerox MMC call center. He lives with his family, and was accompanied to his deposition by his stalwart mother and grandmother.

When Jeremy, Lourdes, and the three other members of their group (Matthew, Rolando, and Lindsey) were leaving 6th Street, they headed east toward a Lyft car they had reserved.[4] They encountered the police at the intersection of 6th Street and Red River.[5] When they approached the intersection, they saw officers across the street, near the intersection's northeast corner. The pedestrian signal was counting down, and Lourdes called out to the officers, asking whether it was okay for them to cross. The officers did not respond, so while the numbers on the pedestrian signal were still counting down, their group crossed the street.[6]

After they crossed the street and were closer to the officers, Jeremy heard one of them (later identified as Defendant Huckaby) say "Hey, come here." The statement was made in a causal voice, and because of Huckaby's tone and demeanor, it did not appear to be a command. Jeremy did not wish to have a conversation, so he continued walking toward their Lyft.[7] The police,

---

[4] Exhibit 1 (King declaration) para. 2. Doc 23-1 (King deposition) p. 29-30.

[5] Exhibit 1 (King declaration) para. 2. Doc 23-1 (King deposition) p. 33.

[6] Exhibit 1 (King declaration) para. 3. Doc 23-1 (King deposition) p. 40-41. Exhibit 2 (Glen declaration) para. 3. Doc 23-8 (Glen deposition) p. 36-37.

[7] Exhibit 1 (King declaration) para. 5. Doc 23-1 (King deposition) p.44.

without another word, abruptly sprinted toward them and roughly arrested Jeremy and Matthew Wallace[8] – the only two African Americans in the group.[9] The police ignored the other free people in the group, as well as two college-aged white men who walked through the intersection at the same time.[10] Between hearing the causal "Hey, come here" and being grabbed and slammed into the wall, Jeremy was not aware the police believed he had jaywalked[11] nor that they intended to arrest him. The officers had not made any other statements. Jeremy did not even see them approach because they sprinted at him while he was facing the other direction.[12] The events were captured in a cell phone video by Rolando Ramiro, one of the other members of the group.[13]

Although Jeremy was initially very surprised and confused to be grabbed from behind, he did not resist the officers at any point, including when they handcuffed him. He never entertained the idea of resisting or fleeing from them.[14] After they handcuffed him, they had him sit on the curb. As he was sitting, he realized his pants had dropped lower than comfortable waste level when the officers were manhandling him. He stood briefly to pull up his pants, saying "I'm going to pull my pants up." Officer Huckaby grabbed him again and pushed him face-first to the street. Although Jeremy was not resisting at this point either, other officers piled on top of him, including Defendant Gallenkamp, who put his knee to the back on Jeremy's neck and rested his weight on it.[15] Jeremy

---

[8] Exhibit 1 (King declaration) para. 6. Doc 23-1 (King deposition) p. 50.

[9] Exhibit 1 (King declaration) para. 8. Doc 23-1 (King deposition) p. 82. Exhibit 2 (Glen declaration) para. 7. Doc 23-8 (Glen deposition) p. 19-20.

[10] Exhibit 2 (Glen declaration) para. 7. Doc 23-8 (Glen deposition) p. 53.

[11] Also called "Crossing Against the Light." Tex. Trans. Code 552.002 (defining the infraction); 542.401 (setting a $200 fine).

[12] Exhibit 1 (King declaration) para. 7.

[13] Plaintiffs' declarations authenticate this video of the incident: https://youtu.be/N340_o0mzfI Exhibit 1 (King declaration) para. 6. Doc 23-1 (King deposition) p. 83. Exhibit 2 (Glen declaration) para. 6. Doc 23-8 (Glen deposition) p. 43.

[14] Exhibit 1 (King declaration) para. 9.

[15] Exhibit 1 (King declaration) para. 10.

later sought medical treatment for his neck, head, shoulders, and wrists,[16] and has experience anxiety since.[17]

Virtually from the moment the police put their hands on Jeremy and Matthew, Lourdes began registering verbal protests which are captured in the video, including "He's hurting him!" and "They're hurting them for no reason!"[18] About a minute after the arrests began, while she was closer to Matthew, she saw Defendant Huckaby push Jeremy face down on the street, and other officers quickly dogpile him, including Officer Gallenkamp who used his knee to rest his bodyweight on Jeremy's neck. She moved closer because it looked like they were hurting him and said "Leave him alone." At that moment, both she and Roland (who was silently filming the incident) were in the bike lane, which is also where the officers were piled on top of Jeremy.[19] One of the officers (later identified as Defendant Jimenez) told her to get back on the sidewalk, so she began moving toward the sidewalk. As Lourdes was walking toward the sidewalk, she said "What are you doing this for?" Immediately after she uttered the statement, Jimenez, without another word, grabbed and arrested her while Rolando continued to film them from his nearby position in the street. At no point did Lourdes resist arrest or make any attempt to flee.[20] She later experienced anxiety, which interfered with her earnings as an insurance agent.[21]

LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be rendered when the pleadings, the discovery materials on file, and any affidavits show that there is no genuine dispute about any material fact and that the moving

---

[16] Doc 23-1 (King deposition) p. 95-98.

[17] Doc 23-1 (King deposition) p. 105-06.

[18] Exhibit 2 (Glen declaration) para. 8. Doc 23-8 (Glen deposition) p. 42.

[19] Exhibit 2 (Glen declaration) para. 9. Doc 23-8 (Glen deposition) p. 63.

[20] Exhibit 2 (Glen declaration) para. 10; Doc 23-8 (Glen deposition) p. 65.

[21] Doc 23-8 (Glen deposition) p. 81-89.

4

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

Defendants' motion, understandably, argues Defendants' theory of the case, but in doing so asks the Court to resolve disputed issues of fact in Defendant's favor, which the Court cannot do. When ruling on a motion for summary judgment, a court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn,* 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

ARGUMENT

A. <u>The police watched seven people jaywalk simultaneously, but only arrested the two African American men in the group, which is unconstitutional selective enforcement</u>.

Jeremy and Lourdes' testimony is their group of five crossed Red River simultaneously but that Defendants only targeted the two black members in the group for jaywalking. Defendants' decision to arrest only the black men and ignore the others is sufficient evidence to state a claim for selective enforcement under the Fourteenth Amendment.

A selective enforcement claim does not require Jeremy to show there was no probable cause for an arrest. "The Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment." *Marshall v. Columbia Lea Regional Hosp.*, 345 F. 3d 1157, 1166 (10th Cir. 2003) (citing *United States v. Avery*, 137 F.3d 343, 352 (6th Cir.1997)); *see also Johnson v. Crooks*, 326 F. 3d 995, 999 (8th Cir 2003). Proving selective enforcement requires him to show that Defendants' actions "were motivated by improper

5

considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Beeler v. Rounsavall*, 328 F. 3d 813, 817 (5th Cir 2003). "To prove discriminatory purpose, the plaintiff does not need to advance direct evidence of discriminatory intent." *Rodriguez v. Harris County, Tex.*, 964 F.Supp.2d 686, 800 (S.D.Tex. 2013) (citing *Rogers v. Lodge*, 458 U.S. 613, 618 (1982)); *accord Moore v. Keller Industries, Inc.*, 948 F.2d 199, 202 (5th Cir. 1991). "Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976). "Because direct evidence of discriminatory purpose is rarely available, courts must make a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Jim Sowell Const. Co., Inc. v. City of Coppell*, 61 F.Supp.2d 542, 546 (N.D.Tex. 1999) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)) (internal quotation omitted).

One way to present evidence of selective enforcement is to "identify similarly situated individuals of a different race [who] were not prosecuted." *Marshall*, 345 F. at 1167 (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)); *see also Johnson*, 326 F. 3d at 1000 (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 634-48 (7th Cir.2001) and *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir.2000)). Plaintiffs' allegation that Jeremy and the other African American member of their party were exclusively targeted for jaywalking even though the whole party crossed at the same time is sufficient to establish a claim for selective enforcement. The claim should therefore proceed to a jury determination.

B. <u>Arresting Ms. Glen because of what she said, but not a similarly-situation silent person, demonstrates unlawful retaliation.</u>

Similarly, Plaintiffs allege that Defendants' true motive for arresting Lourdes for being a "pedestrian in the roadway" was to punish her for her speech. Her main evidence was that a similarly situated person was not arrested: her companion Rolando Ramiro, who also stood in the road, but did so silently. Except for Lourdes' statements, she and Rolando were similarly situated.

6

The Fourteenth Amendment case law described in the previous section applies equally to situations where police officers selectively enforce the law against a person because the person is exercising a protected constitutional right. *Beeler*, 328 F. 3d at 817. That includes the right to freedom of speech. *Bryan v. City of Madison, Miss*., 213 F. 3d 267, 277 n. 18 (5th Cir 2000); *cf*. *Dwares v. City of New York*, 985 F.2d 94, 99 (2nd Cir. 1993) (officers violated the Equal Protection Clause when they refused to protect a protestor from the skinheads attacking him because the officers disapproved of the protestor's support for flag burning).

*Mesa v. Prejean*, which Defendants cite, correctly notes that verbal criticism of the police is protected speech. 543 F.3d 264, 273 (5th Cir. 2008). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id*. (citing *Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir.1992)). *Mesa* is, however, factually distinguishable from Lourdes' case because that plaintiff did not identify a similarly situated person who was treated differently, so its findings in favor of the Defendant are not applicable here.[22]

Plaintiffs presented disputed issues of material fact for Lourdes' First Amendment claim by showing she was arrested while exercising free speech, while a similarly situated person exercising silence was not. The claim should therefore proceed to a jury determination.

C. <u>The officers violated state law in the manner with which they used force to make the arrests. Breaking the law is unreasonable</u>.

Defendants violated state law when they used force on Jeremy and Lourdes. Although the

---

[22] It is necessary to conclude *Mesa*'s panel reached its result because the case's facts were distinguishable from cases like *Beeler* and *Bryan* because if *Mesa* were interpreted broadly to eliminate selective enforcement claims in all instance where police have probable cause to make an arrest, it would mean the panel had overruled the opinions of the panels in *Beeler* and *Bryan*, which it could not do. See *Ford v. United States*, 618 F. 2d 357, 361 (5th Cir. 1980) ("As a panel of this Court, we are without power to overrule a decision of another panel. That task falls solely to the full Court sitting *en banc*").

Texas Tort Claims Act (TTCA) insulates them from accountability for breaking the law, it doesn't make their actions legal.[23] And since it is generally unreasonable to break the law, having done so creates a fact issue about whether their use of force was unreasonable under the Fourth Amendment (the Fourth Amendment standard is addressed in the next section).

Under Texas law, "a person commits assault when he 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.'" *De La Paz v. Coy*, 954 F. Supp. 2d 532, 553 (W.D.Tex 2013) (citing *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir.2009)). The same standard is used in both criminal and civil cases. Texas law authorizes police officers to use force that would otherwise be assault by offering them a limited "civil privilege defense" in Texas Penal Code 9.51(a), which provides:

> A peace officer ... is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest ... if:
>
> (1) the actor reasonably believes the arrest or search is lawful ...; and
>
> (2) **before using force, the actor manifests his purpose to arrest** or search and identifies himself as a peace officer ..., unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested.

*Id.* (citing Tex. Penal Code 9.51, emphasis); *see also Mendez v. Poitevent*, 823 F. 3d 326, 334 (5th Cir. 2016). Slamming another person into a building and then the ground is indisputably "offensive or provocative" conduct, constituting civil and criminal assault. In this case, however, the officers did not "before using force… manifests [their] purpose to arrest", and therefore are not eligible for

---

[23] Plaintiffs concede that TTCA effectively insulates the police from liability under state law for intentional torts.

8

the civil privilege defense, and are guilty of committing assault.

Defendants Huckaby and Gallenkamp did not manifest their purpose through their words. The parties agree that the only words Defendants spoke after the group crossed the street was Huckaby's statement "Hey, come here."[24] Jeremy did not understand this statement to be a command because of Huckaby's tone and demeanor,[25] and even Huckaby agrees that he did not intend for those words to convey to Jeremy that he was under arrest.[26] Nor did Huckaby and Gallenkamp manifest their purpose through nonverbal means – they sprinted at Jeremy from behind, so he had no idea they were coming until they laid hands on him.[27]

Similarly, Defendant Jimenez did not manifest her intend to arrest Lourdes before she used force. Jimenez instructed Lourdes to return to the sidewalk, and Lourdes was complying when Jimenez wordlessly grabbed her in a manner that a reasonable person would know was offensive.

It stands to reason that Texas' civil privilege defense requires officers to manifests their purpose to arrest *before* using force to give arrestees the opportunity to go along peacefully and not become subject to force. But Jeremy and Lourdes, in their respective arrests, never had the opportunity to go along peacefully because Defendants grabbed both of them without first "manifest[ing their] purpose to arrest." Therefore the civil privilege defense does not apply, and Defendants' committed assault. Since breaking the law is generally unreasonable, having broken state law by using force creates a fact question about the reasonableness of their conduct under the Fourth Amendment.

---

[24] Exhibit 1 (King) para. 5.

[25] Exhibit 1 (King) para. 5.

[26] Doc 23-3 (Huckaby deposition) p. 70.

[27] Exhibit 1 (King) para. 7.

D. <u>The force used on Jeremy King was objectively unreasonable under the Fourth Amendment.</u>

When Defendants Huckaby and Gallenkamp encountered Jeremy, they believed he was guilty of nothing more than "crossing against the signal," an offense warranting no more than a $200 fine.[28] They have not testified they believed Jeremy would try to hurt them or another person, nor that he was trying to escape. More importantly for summary judgment, Jeremy's testimony is that he never resisted arrest nor contemplated trying to flee. Yet Huckaby and Gallenkamp ran at him from behind, grabbed him, slammed him into a wall, handcuffed him, and ultimately pushed him face-first to the ground. They piled on him, with Gallenkamp kneeling on his neck. All this for jaywalking.

The elements of a Fourth Amendment claim for excessive force are "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Callaway v. City of Austin*, 1:15-cv-00103-SS, Entry 116 *7 (July 28, 2016) (*citing Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016)).[29] For the third element of that test – objective unreasonableness – the Court must in turn review three more factors: "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect [was] actively attempting to evade arrest." *Id.* (*citing Poole v. City of Shreveport*, 691 F.3d 624, 638 (5th Cir. 2012)).

Addressing those factors in order: first, Jeremy was accused of jaywalking, an offense with a maximum fine of $200 – the lowest tier of Texas crimes. Second, Jeremy's testimony is that he and his friends were merely walking toward their Lyft, had no idea the police believed they had

---

[28] Tex. Trans. Code 552.002 (defining the infraction); 542.401 (defining the penalty).

[29] Defendants do not appear to dispute that Jeremy suffered a physical injury. Rather, they argue there was no "constitutional injury." But for the sake of discussing the elements, Plaintiffs reiterate that Jeremy alleges he sought out medical treatment for his neck, head, shoulders, and wrists after his arrest (Doc 23-1 p. 95-98) and has experience anxiety since then (Doc 23-1 p. 105-06).

10

committed a crime, and that he did not resist arrest. In short, he was nothing more than an average pedestrian. Third, Jeremy's testimony is that he never tried to evade arrest, nor even contemplated it.

*Deville v. Marcantel* is a similar case in which a woman was arrested after being stopped for a traffic offense. 567 F. 3d 156 (5th Cir. 2009). The Fifth Circuit regarded her allege traffic violation as a minor crime. *Id*. at 167. She was perfectly calm until the officer moved to arrest her, so the arresting office had no reason to believe she was a threat, and further, during the arrest she did not affirmatively resist. *Id*. Finally, although she was sitting in her car with the motor running, it was never in gear and she testified she told the officer she was waiting for her husband, so the arresting officers had no reason to believe she was going to flee. *Id*. at 168. Further, although she received clear instructions[30] to step out of the car (*id.* at 161), the Fifth Circuit concluded the degree of force the officers used was inappropriate because she had merely failed to comply with instructions and the officer had not first attempted to negotiate with her. *Id*. at 168. Indeed, this Court has previously concluded:

> In particular, where a suspect is noncompliant but is not attempting to fight or flee, the Fifth Circuit has found the immediate resort to physical force "without attempting to use physical skill, negotiation, or even commands" is objectively unreasonable.

*Callaway v. City of Austin*, 1:15-cv-00103-SS, Entry 59 *24-25 (July 14, 2015) (citing *Deville*, 567 F.3d at 169 and *Newman v. Guedry*, 703 F. 3d 757, 763 (2012)). Even ignoring that the Defendants were not authorized by state law to use force (which was discussed in a previous section), there is another disputed fact question about whether the force was unreasonable because the accused crime was very minimal, Jeremy did not pose a danger to others, and he was not

---

[30] "Clear instructions" is more than what Jeremy received, so in that respect, Defendants had even less cause to use force on in than on the plaintiff in *Deville*.

attempting to flee, and yet the Defendants failed to tell him to stop or that he was under arrest before using force on him.

E. <u>The force used on Lourdes Glen was objectively unreasonable under the Fourth Amendment.</u>

The reasoning in the last section also applies to Lourdes' arrest: Defendant Jimenez inflicted injury on Lourdes[31] by using objectively unreasonable force to arrest her. *Cass*, 814 F.3d at 731. Using force was unreasonable because, as was explained in an earlier section of this response, Defendant Jimenez's use of force was unlawful. Jimenez committed assault against Lourdes by touching her in an offensive manner without justification under Texas Penal Code 9.51 (see p. 8-9). The fact that Defendant Jimenez broke the law creates a fact issue about whether that force was unreasonable under the Fourth Amendment.

CONCLUSION

Defendants' motion is fundamentally flawed because it relies almost exclusively on disputed issues of fact. Reviewing Plaintiffs' testimony under the proper summary judgment standard reveals there are disputes issues of fact for each element of their claims. Therefore, Defendants' motion -- which respect to Huckaby, Gallenkamp, and Jimenez – should be denied. Plaintiffs are not opposed to the motion with respect to Richard Munoz.

DATED: April 16, 2017.

---

[31] Further, Lourdes suffered a psychological injury as a result of the arrest, which is adequate to satisfy the injury element of an excessive force claim. *Callaway v. City of Austin*, 1:15-cv-00103-SS, Entry 116 *8 (July 28, 2016) (*citing Flores v. City of Palacios*, 381 F.3d 391, 401 (5th Cir 2004). Following her arrest, Lourdes experienced anxiety which interfered with her work as an insurance sales agent. Doc 23-8 (Glen deposition) p. 81-89.

                        Respectfully submitted,

                        /s/ Brian McGiverin
                        Brian McGiverin
                        Texas Bar No. 24067760
                        brian@lawcenterofaustin.com

                        DIETZ, LAWRENCE & MCGIVERIN
                        2221 Hancock Drive
                        Austin, TX 78756
                        Telephone: (512) 387-0718
                        Fax: (512) 597-0805

                        ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing has been served on all counsel of record who have appeared in this matter through the court's Electronic Case Files System.

                        /s/ Brian McGiverin
                        Brian McGiverin