FILED
2017 OCT 12 PM 1:59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY KING and LOURDES GLEN | § | |
| | § | |
| V. | § | A-16-CA-131-SS |
| | § | |
| RICHARD MUNOZ #3029, | § | |
| BRIAN HUCKABY #5159, | § | |
| GUSTAVE GALLENKAMP #7077, | § | |
| VANESSA JIMENEZ #7611, and | § | |
| UNKNOWN OFFICERS | § | |

## ORDER ON REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court in the above-styled and numbered cause is Plaintiffs' civil rights complaint. *See* 42 U.S.C. § 1983. Plaintiffs' complaint was referred to the United States Magistrate Judge for findings and recommendations. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; Loc. R. W. D. Tex. Appx. C. The Magistrate Judge recommended that the Defendants' Motion for Summary Judgment be granted in part and denied in part. Plaintiffs and Defendants object to the Report and Recommendation. In light of the objections to the Report and Recommendation, the Court has undertaken a *de novo* review of the entire case file in this action and finds and concludes that the Report and Recommendation of the United States Magistrate Judge is correct and should be accepted and adopted by the Court for substantially the reasons stated therein.

### Background

As summarized in the Report and Recommendation, Plaintiffs Jeremy King and Lourdes Glen were part of a larger group of friends who were crossing an intersection at Red River and Sixth

1

Street at about 2:40 a.m. on November 6, 2015. Dkt. #1 ("Compl.") at 9-10. The group included Jeremy King, Matthew Wallace, Lourdes Glen, Rolando Ramiro, and Lindsey Salazar. Plaintiffs contend the group began to cross the intersection together as the pedestrian signal was counting down and continued to cross the intersection together. Dkt. #23-1 ("King Depo.") at 43:19. Defendants, all City of Austin police officers, contend as the group began to cross the intersection, the officers instructed the group not to cross and most members of the group returned to the sidewalk, but King and Wallace continued to cross the intersection against the signal. Dkt. #23-3 ("Huckaby Depo.") at 15:7-18. King and Wallace, the only two African Americans in the group, were in the intersection when the pedestrian signal was against them. King Depo. at 41:20-42:16. After the group crossed the intersection, King and Wallace were forcibly arrested by the officers. King Depo. at 49:16-50; Huckaby Depo. at 28:11. Video, recorded by Ramiro on his cell phone, begins to record the incident just as officers approached King and Wallace. Dkt. #23, Exh. 6. Glen was subsequently arrested minutes later. *Id.* Her arrest was also recorded by Ramiro on his cell phone. *Id.*

King was charged with Disregard of a Pedestrian Control Device, colloquially known as jaywalking. Dkt. #23 at 5. The charge was ultimately dismissed. *Id.* Glen was charged with Pedestrian on a Roadway, to which she pleaded no contest. Dkt. #23 at 5, Exh. 10.

King and Glen bring several causes of action against the officers. King asserts a selective enforcement claim against the officers, claiming he and Wallace were arrested because they are African Americans while the Anglo members of their group were not initially arrested. Compl. at 20-25. King and Glen also assert excessive force claims regarding the use of force in their arrests. *Id.* at 26-35. Glen brings a First Amendment retaliation claim against the officers, claiming she

was arrested in retaliation for her criticisms of the officers' use of force on her companions. *Id.* at 38-40. Finally, King and Glen raise state law claims of assault.[1]

Defendants Munoz, Huckaby, Gallenkamp, and Jimenez move for summary judgment arguing Plaintiff's claims lack merit and they are entitled to qualified immunity on the excessive force claim.

The Magistrate Court recommends the Court deny Defendants' Motion for Summary Judgment with respect to King's selective enforcement and excessive force claims, grant the motion with respect to Glen's excessive force and retaliation claims, grant the motion with respect to the state law claim, and dismiss Defendants Munoz and Jimenez.

Defendants object to the Magistrate Court's recommendation with regard to King's selective enforcement claim but do not object to the Magistrate Court's recommendation with regard to King's excessive force claim.

Glen objects to the Magistrate Court's recommendation with regard to Defendant Jimenez's use of force against her. Glen also objects to the Magistrate Court's finding that her injuries were *de minimis*, her retaliation claim has no merit, and Defendant Jimenez is protected by qualified immunity.

---

[1] As noted by the Magistrate Judge, Plaintiffs informed the Court they are no longer moving forward on their state law assault claims.

## Analysis

### I. Legal Standards

#### A. Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required

to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### B. Section 1983

Section 1983 provides a cause of action to individuals whose federal rights have been violated by those acting under color of state law. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Section 1983 is not itself a source of substantive rights; rather, it merely provides a method for vindicating federal rights conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). In order to state a claim under Section 1983, a plaintiff must (1) allege a violation of rights guaranteed by the United States Constitution or federal law, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215.

## II. Application

### A. King's Selective Enforcement Claim

The Magistrate Judge recommends denying summary judgment with respect to King's selective enforcement claim and finding a factual dispute as to whether King was similarly situated

5

to the rest of the group precludes summary judgment. Defendants argue the Magistrate Judge erred in finding there is a factual dispute and deny King submitted sufficient evidence of discriminatory intent.

As explained by the Magistrate Judge, "to successfully bring a selective prosecution or enforcement claim, a plaintiff must prove the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (*quoting Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)). "[I]t must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id. (quoting Allred's Produce v. U.S. Dept. Agriculture*, 178 F.3d 743, 748 (5th Cir. 1999)).

To succeed with a selective enforcement or prosecution claim, a party must demonstrate the enforcement had a discriminatory effect and was motivated by an invidious purpose. *United States v. Lawrence*, 179 F.3d 343, 349 (5th Cir. 1999); *United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006). These requirements draw on "ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). However, direct evidence of discriminatory intent is not required. *Rodriguez v. Harris County, Tex.*, 964 F. Supp. 2d 686, 800 (S.D. Tex. 2013) (*citing Rogers v. Lodge*, 458 U.S. 613, 618 (1982)); *accord Moore v. Keller Indus., Inc.*, 948 F.2d 199, 202 (5th Cir. 1991). "Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976).

King and Glen contend their group began to cross the intersection together as the pedestrian signal was counting down and continued to cross the intersection together. The defendant officers

6

contend, as the group began to cross the intersection, the officers instructed the group not to cross. According to the officers, King and Wallace continued walking, but the others returned to the sidewalk. Whether all five crossed together or whether only King and Wallace continued to cross is disputed.

Defendants argue King was not similarly situated to Glen, Salazar, and Ramiro, because King ignored Officer Huckaby's instructions to "come here" and profanely instructed the others in the group to keep walking.[2] Defendants argue they do not have the burden to prove why other officers arrested Wallace. They further argue they are presumed to have properly discharged their official duties.

The Court agrees with the Magistrate Judge and finds, if all five crossed together and only the two African Americans were arrested for jaywalking, there is a factual dispute as to whether or not King was arrested due to his race. Accordingly, summary judgment is denied with respect to Defendant King's selective enforcement claim.

B.      Glen's Retaliation Claim

The Magistrate Judge recommends granting summary judgment with respect to Glen's First Amendment retaliation claim. Glen objects, arguing she presented evidence showing she was arrested for the content of her speech and would not have been arrested if she had been silent.

---

[2]As King and Wallace were crossing the street, King heard one of the officer say "come here." King Depo. at 32:15. King admits in response he told Wallace, "F that, we straight," and continued to walk forward. *Id.* at 32:17-21. Wallace agrees King told him "fuck that, we're straight." Wallace Depo. at 30:5-16. Ramiro on the other hand reflects King responded, "Man, fuck these niggas." Ramiro Depo. at 19:18. As noted by the Magistrate Judge, while King's exact response is disputed, the meaning of the purported response is basically the same – don't worry about those officers, we're not doing anything wrong, keep walking.

Individuals who protest are []protected under the First Amendment from retaliatory actions by government officials. *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). But if an officer has probable cause to seize that individual, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Id.* at 245 (*quoting Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002)). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Hogan*, 722 F.3d at 731 (*quoting Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed.2d 343 (1979)).

Officers are therefore entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest. *See Crostley v. Lamar Cty.*, 717 F.3d 410, 422–23 (5th Cir. 2013); *see also Cooper v. City of La Porte Police Dep't*, 608 Fed. Appx. 195, 199 (5th Cir. 2015) ("[O]fficers are entitled to qualified immunity unless there was not probable cause for the arrest and a reasonable officer in their position could not have concluded that there was probable cause for the arrest." (citing Crostley, 717 F.3d at 422–23)).

*Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017).

As noted by the Magistrate Judge, Glen was charged with Pedestrian on a Roadway, and the video of her arrest clearly demonstrates she was in the roadway at the time of arrest. Moreover, Glen pleaded no contest to the charge. Therefore, whether officers were subjectively motivated by her speech is irrelevant.

Glen also contends the Magistrate Judge erred by relying exclusively on the First Amendment, because the Fourteenth Amendment is also relevant. The Magistrate Judge held a hearing on Defendants' Motion for Summary Judgment. At the hearing, Glen conceded she did not plead a claim for selective enforcement pursuant to the Fourteenth Amendment and orally moved for leave to amend her pleading to add the claim. The Magistrate Judge noted such amendment would require amending the undersigned's scheduling order and instructed Glen to take it up in her objections to the District Court. The deadline to file amended pleadings was January 9, 2017. Glen

has not filed a motion to amend her complaint, and she clearly did not plead a selective enforcement claim. Accordingly, the Magistrate Court did not err in analyzing Glen's claim solely under the First Amendment.

Moreover, whether Glen raises a claim under the First Amendment or Fourteenth Amendment, her claim does not survive summary judgment. Upon review of the video of Glen's arrest, it is clear she is not similarly situated to Ramiro. The video reflects Glen continued to ignore Officer Jimenez's warnings to get back and stay out of the roadway. Ramiro, on the other hand, appeared to comply with officers instructions and did not interfere with any of the officers' duties.

C.    **King's and Glen's Excessive Force Claims**

Both King and Glen allege claims of excessive force. Defendants Huckaby, Gallenkamp, and Jimenez move for summary judgment on the basis of qualified immunity.[3]

Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two considerations: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

---

[3]Defendant Munoz was not present at the time of arrest, and Plaintiff concedes he should be dismissed from the case.

situation he confronted." *Lytle v. Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 233. Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted).

Though the Court views all facts in the most favorable to King and Glen on Defendants' motion for summary judgment, the burden remains on King and Glen "to negate the [qualified immunity] defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

The Fourth Amendment confers a right to be free from excessive force during an arrest. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In determining whether the force used is "excessive" or "unreasonable," the Supreme Court in *Graham* identified three sets of facts which deserve careful consideration: (1) the severity of the crime at issue, (2) whether the suspect

poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396.

### 1. King's Excessive Force Claim

Defendants did not object to the Magistrate Judge's recommendation with respect to King's excessive force claim. As explained by the Magistrate Court, disputed issues of material fact preclude summary judgment on King's excessive force claim, because it is unclear whether any force was necessary under the *Graham* factors.

### 2. Glen's Excessive Force Claim

The Magistrate Judge recommends granting summary judgment with respect to Glen's excessive force claim. After considering the *Graham* factors, the Magistrate Court concluded the force used to arrest Glen was not excessive, her alleged psychological injury was *de minimis*, and the arresting officers were entitled to qualified immunity. Glen objects, arguing a fact issue precludes a finding of qualified immunity for Defendant Jimenez and Glen's injuries were not *de minimis*.

As aptly explained by the Magistrate Judge, the minimal use of force to secure Glen's hands behind her back was not excessive or unreasonable. Where, as here, there is a video recording of the events in question, "the Court should analyze the video evidence and reject the plaintiff's account only where the video evidence so clearly discredits the plaintiff's story that no reasonable jury could believe the plaintiff's version of the events." *Chacon v. City of Austin*, No. A-12-CA-226-SS, 2013 WL 2245139, at *14 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). The video recording of Glen's arrest clearly shows Glen was repeatedly instructed to stand back, she continually invaded the scene where the officers were attempting to carry out the arrests of King and Wallace, the force

11

used to effect her arrest was minimal, and the officers actions were not unreasonable in light of clearly established law at the time of Glen's arrest.

## Conclusion

After consideration of the objections filed in this case, the Report and Recommendation of the Magistrate Judge is accepted and adopted. Summary judgment is granted with respect to Plaintiff Glen's excessive force and First Amendment retaliation claims and Plaintiff King's and Plaintiff's Glen's state law claims for assault. Defendant Munoz is dismissed, as the plaintiffs concede, he was not present at the time of the arrests. Finally, Defendant Jimenez is entitled to qualified immunity protection.

**IT IS ORDERED** that the Plaintiffs' and Defendants' Objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge filed in this action is hereby **ACCEPTED AND ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** as fully explained in this order.

**IT IS FINALLY ORDERED** that Defendants Munoz and Jimenez are dismissed with prejudice.

SIGNED this _12th_ day of October 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE